Good morning, Mr. Court. My name is Lawrence Bordway, and I'm representing the appellant, Lisa Kennedy, in this matter. This morning, we'd like to focus our attention, or our argument, upon Ms. Kennedy's hostile work environment claim. With respect to the hostile work environment claim, there are really two issues of dispute. It's whether Ms. Kennedy suffered a tangible employment action, and the Court's application of the analysis of the Ferger-Ellinger defense. With respect to the tangible employment action issue, there are three tangible employment actions, the first being... The defendant has conceded that there is a hostile work environment in Ms. Kennedy. Yes. I don't believe that the incentive for harassment is a relevant one. It is relevant, yes. Yes, I do. It is relevant in terms, once you get to the Ferger-Ellinger defense, in terms of the reasonableness of the response. So, I submit to the Court that in looking at what they did in response to her complaint, her internal complaint, that she had been sexually harassed and sexually abused, that what he did must be considered in responding and investigating the complaint. So, when you look at it, they put her back in the supervisory role. In the same service, in the same office, in the same shape. Yes. And since that's, I think, a question of background, whether the defense are, in other words, satisfied, in other words, that their reaction to the Court is based on the fact that Ms. Kennedy was sexually assaulted, that's a very specific issue. So, in the Ferger-Ellinger defense, is it a question of fact or is it a magnitude of certain harassment? I think the question of fact is whether the response was reasonable given the magnitude of the allegations. The allegations. The allegations. Yes, that's correct. Her allegations were that Mr. Beale raped her on two occasions during the week of August. Yes. Yes, that's correct, Your Honor. It is the magnitude of the harassment. So, in your brief, excuse me, in your complaint, you alleged that after his initial advances were rebuffed, he started to complain about her work. But I didn't see any of that in the facts as a summary judgment. So, did I miss that? No, I don't believe you did, Your Honor. Where is it in the record? What happened, Judge, is that she rebuffed him initially and then he continued. He persisted. He persisted to… I know all that. I'm talking about something much more specific, which is in three places in your complaint, paragraph 33, paragraph 45 and 40, and paragraph 48, you alleged that after she initially rebuffed his advances, he started complaining about her work. But I didn't see anything in the factual submissions, and this is summary judgment that we're talking about, that supported that. So, am I correct that that was, for whatever reason, that was not part of summary judgment? But what I recall being part of summary judgment, Your Honor, is the incidences where we pointed out how he compelled her to come in to work on those two weekends where she was sexually assaulted. He criticized her work. At first, in August of 2010, he said, well, you haven't finished your audit report. You've got to finish your audit report. You have to come in. And then later on in September, he criticized her for not having completed… Okay, so you're now limiting it to what he said to her as a way of explaining why she had to come in. What he said to her was a criticism of her work, of her employment. I understand. I just want to make sure that the two things you just mentioned, I'm not saying they're irrelevant. I just want to make sure that's what you're now referring to when you say that he criticized her work. Yes, Your Honor. Yeah, there were three, Your Honor, there was quid pro quo harassment, destructive discharge, and forcible transfer. That is what the district court concluded, Your Honor. However, in Shiano, this court decided that actually using the words quid pro quo is not required and that in that case it allows the appellant to raise the quid pro quo theory on appeal for the first time. Now, in our complaint, we do – the complaint does contain the words, you know, trust me. You've got to trust me. If you take care of me, I'll take care of you. Yes, Your Honor. And so looking at the allegations made in the plea in itself, that's sufficient to preserve – Well, we do have other things in the complaint, Your Honor. Byron Cochran, we also allege in the complaint that he compelled her to come in on those two days where she was sexually assaulted. And I think we also allege – I can't specifically recall, but I do believe it was in there – that he told her everything that stays on the station – happens on the station, stays on the station. And he told her separately that – not to trust human resources and that he's the first to know when a complaint is made with human resources. So in that way, I believe the complaint is sufficient to preserve the quid pro quo for us. There are several things – I see I'm out of time. There are several things that they failed to do. It's not what they did. It's what they didn't do and the reason for failing to do so. They did not adequately conduct a computer investigation. So in the computer report, they didn't look at some obvious signs that would confirm her presence on those two days when she was sexually assaulted. They didn't look at the event history. They didn't look at the browser history for that computer. They also failed to look at – I believe it's called the FINMIS system, which may be a proprietary system whereby that's how they complete their time card reports. And they didn't look for the hard copies of the time card reports themselves. No, what they looked for is – What they conceded, what they said is that they assumed her presence on site on those two days. But I would submit to you that there is a difference between assuming her presence on site and having their own documentary evidence that shows that she was present on site. The other thing that their investigation was inadequate with is that they never bothered to speak with her healthcare providers. Ms. Kennedy had told Ms. Corso and Ms. Olvidia that she had seen a therapist. She provided a doctor's note. And the response to that from Fedex was that, well, the doctor's note itself didn't contain any contact information. It would have been helpful – respectfully, it would have been helpful to witness. It would have either confirmed that she was being consistent with what she had told both Fedex, her therapist, her doctor, and the Bierhaus. Or it would have shown that she was somehow inconsistent. But more importantly, by speaking to her therapist, her therapist could have confirmed, as she did in her deposition testimony, that Ms. Kennedy was suffering a symptom, a symptomology that's consistent with someone who had been sexually harassed and sexually abused. So that's why speaking to therapists, and potentially the doctor as well, is so significant in this case. I see my time is up. Thank you. Thank you, Your Honor. I'm Whitney Fogarty with Federal Express Corporation here on behalf of Federal Express, and I'll just refer to them as FedEx. The record before you contains no disputed issue of material effect. The district court applied well-established law to those undisputed facts, drew all reasonable inferences in favor of Ms. Kennedy, and correctly found that Federal Express, or FedEx, is entitled to judgment as a matter of law with respect to all three claims asserted against it. What Ms. Kennedy is asking – The Supreme Court has said that if the supervisor's harassment culminates in a tangible employment action, then the fair or ill defense is not available to employers. Yes, Your Honor, we are. Given the standards that are applicable to summary judgment, the summary judgment stage of proceedings, we conceded for purposes of summary judgment that a hostile work environment existed. So the court need not decide whether or not Ms. Kennedy was harassed. The only issue before the court with respect to the hostile work environment claim is whether or not FedEx can be held strictly liable for that harassment. Yes. And as you know, the state of New British, the state of New Britain, harassed Ms. Kennedy. And I'm not at all inclined to discuss whether or not Ms. Kennedy was held liable for that. Because the law to date, Your Honor, doesn't make a distinction between levels of harassment, if you will. There's not one standard under fair or ill that's applicable to a rape allegation, as opposed to an allegation of crude and offensive comments in the work environment. The standard is the same. The standard is, if the supervisor's harassment did not culminate in a tangible employment action, then the employer is entitled to be held liable for all of its offense. And the standard with respect to the investigation, Your Honor was talking about the response, is one of reasonableness. It's not one of perfection. We can all act as Monday morning quarterbacks and decide that, well, you should have called for a therapist or you should have done this. But the standard is one of reasonableness. And that standard applies, again, regardless of whether the allegation is one of rape or is one of offensive comments. Yes, that's Ms. Kennedy's contention. My response is twofold. First of all, as Your Honor noted, and as Mr. Ordway conceded, the district court correctly held that no theory of quid pro quo was asserted in the complaint. All right. Let me rephrase that. He conceded that the district court held that the theory of quid pro quo was not asserted in the complaint and, therefore, is not properly before this court. I'm not sure that's true. But assuming it was never formally pled, you understood it was part of the case, did you not? Because in your depositions that you took, you asked, for example, you asked whether, you asked the plaintiff whether Beal ever threatened her with firing or demotion or if she was ever actually fired or demoted. So you wouldn't be asking those questions unless you thought there was lurking there a quid pro quo claim. Yes? Well, Your Honor, I asked those questions in order to get at the nature of the hostile work environment. Were there threats involved in the hostile work environment? There's always, I believe, in the realm of sexual harassment, the potential that a plaintiff could later claim quid pro quo. But simply having the potential to later claim it doesn't mean that the claim is properly before the court if it's not pled in the complaint or if allegations in the complaint are not sufficient to give the parties notice. Well, there was certainly in the complaint the allegation about if you take care of me, I'll take care of you, right? That's correct, yes. All right, which is certainly sounds like some kind of quid pro quo, maybe not the kind of quid pro quo that would support the claim, but it's on its face. It is a quid pro quo if those Latin words mean anything. And then there's the, she is told she must come in on a Sunday, even though that's not her normal work day. And then she's told the second time that she must come in on the Sunday. Why isn't that implicit? If you don't come in, you are going to be punished in your job. Because I don't believe that's what the record evidence establishes, Your Honor. There's no proof in the record that she was told you must come in on Sunday to perform this work. Instead, if memory serves me correctly, the evidence in the record, the testimony from Ms. Kennedy, is that she was confronted by Alvin Beal, who said you didn't finish your time card audits, and you didn't complete one other task that needs to be completed by Monday morning. There's nothing in the record to suggest... And therefore, you have to come in. And therefore, you have to come in, yes, or complete it at some point. But there's nothing in the record... No, it has to be completed by Monday morning, and this is Sunday. Correct, but Your Honor, there's nothing... So you don't have a choice. There's no choice, but there's nothing in the record that would tie those comments to his sexual conduct with Ms. Kennedy. In other words, there's nothing in the record that would establish he didn't make similar or give similar instructions... But according to the... I mean, by getting her in there on a Sunday, according to the allegations, he was able to rape her. Because he had her alone with no one else there, and that provided him with the opportunity that he otherwise would not have had. But that's Ms. Kennedy's argument, Your Honor. Well, I mean, that's the... We're dealing here with... She's testified that she was raped, and we have to assume that for purposes of this appeal, yes? Yes. You also... I was bothered by you... At page 27 of your brief, you say that her deposition testimony, quote, you then cite six references. Four of those are not her deposition at all. One of them is the you take care of me, I'll take care of you, which I don't think can be possibly viewed as an abandonment of the quid pro quo theory. And the only other one is that she testified that he never expressly, explicitly, said he was going to fire or demote her. That's different from... That's not a concession that there wasn't an implicit evidence to that effect. So I don't understand how you were able to make the statement you made at page 27. Your Honor, I think we made that statement because in Finnerty v. William H. Sadler, this court referenced the fact that there must be an explicit threat. In order for quid pro quo harassment to exist, there must be an explicit threat, or there must be some affirmative step taken by the supervisor to condition a job benefit or detriment to the employee's submission to or rejection of the supervisor's sexual demands. In this case, Lisa Kennedy testified, and I can provide, I believe, the citations to the record, that Alvin Beal never threatened to terminate her. He never threatened to discipline her. Now, what she said was he never expressly or explicitly said those words. That's her testimony. That's correct, that he never explicitly said that. But also if you look at the comments on their face and place them in the appropriate context, for example, Ms. Kennedy said that Alvin Beal made the statement to her, what happens in this station stays in this station. That comment wasn't made in the context of Alvin Beal and Lisa Kennedy discussing their sexual relationship. It was made in the context of Lisa Kennedy dis— I'm sorry, Your Honor? Yes, Your Honor, I am. I don't believe there's any issue of material fact with respect to those comments, and here's why. I believe this Court can find as a matter of law that they do not meet the threshold for quid pro quo harassment because there needs to be an explicit threat or there needs to be some affirmative step taken to tie some employment action to her submission to or rejection of his sexual demands. What we're talking about in this context is a tangible employment action. It is not, Your Honor. A tangible employment action is a significant change, as defined by the Supreme Court, a significant change in the work environment, such as a demotion, a change in pay, something along those lines. We had two Sundays or two weekends when Mr. Beal confronted Ms. Kennedy because she had not timely completed her job responsibilities and told her that she needed to complete them before Monday. There's no evidence in the record— To follow up on Judge Levier's point, I understand that's one possible way of viewing it, but why couldn't a reasonable juror say, no, he was saying to her, you must come in to finish this work even though it was not her normal work hours and the result would be that the two of them would be alone and that would give him the opportunity to rape her. And the only reason she came in the second time after he had raped her, according to her allegation, was because she reasonably feared that he was saying, in effect, you're going to be fired if you don't do this. I think, Your Honor, with all due respect, those are unreasonable inferences to draw from the facts that exist in this case. There's no evidence in the record to suggest that Mr. Beal told her when he instructed her to come in on those weekends that he was even going to be there. His instruction was you need to complete this before Monday. And there's no evidence in the record— What does the record show as to why he was there? There's nothing in the record to show as to why he was there. There are no facts to explain— Well, why isn't that harmful to your position? If there was no reason to be there and he winds up being there, doesn't that suggest that his use of this, you must come in, was really a ruse used to get her at his mercy? Well, there is evidence in the record that at least on one Sunday, Mr. Beal signed into his computer. I assume if Mr. Beal testifies, he will testify that he was there to perform work as well. FedEx is a 24-7 operation, and it's not unheard of at all for managers who work for a 24-7 operation to work beyond the normal 8 to 5 during a regular work week. So we can also assume that he was there to perform business-related functions. The problem is I think we're moving beyond the facts that exist in the record. And on summary judgment, we're required to look at the facts that are established in the record. We can draw reasonable inferences based on those facts, but we're confined. You're asking us to do what? You're asking us to do what? Yes, that's correct, Your Honor. Yes, not without any additional facts. If that's all you have as a straight comment, then that cannot as a matter of law. That's correct, but again we have to look at what the Supreme Court has said. And the Supreme Court has said that in order to strip an employer of its affirmative defense, there must be a tangible employment action. That's why courts require some affirmative step. That's correct, that there is a link. That's what's missing in this case is the link. There is a comment, but there is no link. No affirmative step, no tangible employment action was taken. For example, if Ms. Kennedy had rebuffed Alvin Beal's sexual advances, and then thereafter, Alvin Beal docked her pay or changed her hours or did something to alter her job responsibilities, then we would have evidence of a link between the two, but we don't. Because Alvin Beal took no action, no tangible employment action, defined by the Supreme Court as an official action, usually documented in company records. He took no tangible employment action against her. And the record is clear. Not an unfulfilled threat. The Supreme Court in Burlington Industries v. Elrath said that if a threat is unfulfilled, there is no tangible employment action. And in this case, at best, we have an unfulfilled threat, because the record is clear that there was no action taken against Ms. Kennedy as it relates to her employment status. And when she told him in December of 2009, I'm done, the new year starts now, when she said, I'm done, and rejected him, no adverse action followed. None. So at best, as the Supreme Court recognized in Elrath, we have an unfulfilled threat that does not rise to the level. I'm not sure I totally understand your argument. Are you saying that if someone says to an employee, I will fire you unless you have sex with me, and so they have sex with him, and so she isn't fired, that that doesn't state a claim? I think that would state a claim, Your Honor, because there we have an explicit threat in the link that I was talking about. We have an explicit threat in a comment that says, if you do not have sex with me, you will be fired. There we have a link. Here, we don't have a link. And we only have... ...to take care of the non-threat by itself. It shouldn't be an action. If you go to the point of that conclusion, I don't know. Can you tell me what you think of that decision? Well, Your Honor, I think it depends on the threat, and I apologize if my statements are confusing. I think it depends on the nature of the threat. I was referring to the comment in this case. In this case, there is no link. There is no explicit threat. There is no tangible job judgment. So, if a body loss comes up to you in the shower, and he says, can you take care of me? I'll take care of you. Is that correct? It depends on the context, Your Honor. Well, I'm not aware of any context. That's not correct. And for the safety of the person, I'm not sure. Well, a threat, again, in the context of when there is a link and a tangible employment action. In that case, the tangible employment action would be the retention of the employment. Here, we have no link. We have no tangible employment action, because we have Ms. Kennedy rejecting his sexual advances in December of 2009, and we have no subsequent tangible employment action. She was able to retain her job, despite rejecting his sexual advances, and he took no adverse action against her as a result of her refusal to continue to engage in this relationship with him. That's the difference. Thank you, Your Honor. Very quickly, Your Honor. I believe that in the Frigian decision, this Court, which is a pre-elegant decision, this Court held that a threat may be an implicit threat, and then subsequently, in the case of Gin, the threat may be unfulfilled. In Gin, the Court rejected the argument that the threat was an unfulfilled threat. That was rejected. And so, under certain circumstances, a threat can be both an implicit threat... I think the argument your adversary was making, as I understood it, was that if one is called upon, in connection with a summary judgment motion, to figure out what would be a reasonable inference, and an ambiguous statement might be a threat or might not be a threat, the fact that no action actually followed, that despite the rejection of the advances, no employment action would follow, would be a factor that might convince someone that no reasonable juror could have viewed that ambiguous statement as a threat. I think that's the argument you were making, maybe. And if so, what's your response to that? I'm not sure, Your Honor. Here's what we have to say about this case. This is a very complicated case, in that it is both a refusal case and a submission case. The conduct, the sexual assault, was not welcome. However, it is a submission case in the sense that Mr. Beale got what he wanted, and in the submission case, I think the law is fairly clear that there doesn't have to be an adverse consequence. Does that answer your question, Your Honor? Well, yes, but what you're saying then goes back to a different aspect, which is could a reasonable juror view his telling her that she had to come in to finish her work because it was due on Monday and so forth, view that as, in effect, a threat to take adverse employment action, then she succumbs to that in the sense of coming in. That then gives him the opportunity to commit the rape. That would have to be, if I understand your position, that would have to be your argument. In an independent decision, the District Court, which is the Northern District of New York case, found that summary judgment under those very circumstances were inappropriate. I see that my time is up now.